Case number 23-5288, Tobias Jones Appellant v. United States Secret Service of the U.S. Department of Homeland Security, et al. Mr. Yablon for the appellants, Ms. Lilly for the appellees. Good morning, counsel. Mr. Yablon, please proceed when you're ready. Thank you. Good morning, and may it please the Court. The District Court's decision that there could be no remedy against Secret Service officers for First and Fourth Amendment violations should be reversed, both as to monetary and non-monetary relief. First, on Bivens, the Court concluded that because the Secret Service has some national security responsibilities, any claim against Secret Service officers arises in a new context. That result's untenable. As the government does not dispute, it would slam the door shut on claims against officers of practically every federal law enforcement agency, because nearly all such agencies, like the Secret Service, have a mix of national security and traditional law enforcement functions. That includes officers employed by agencies like the Park Police, against whom this Court has held there is no question a Bivens claim may lie. As a fallback, the government contends that the officers here fall outside Bivens, because they were themselves exercising the service's protective functions. But that position is unsupported by the complaint and totally counterfactual. The service's protective mandate is narrowly defined by statute and includes the protection of specific high-ranking government officials. The defendants here are officers who are checking IDs at the office building where they worked, not guarding the President. There are simply no national security concerns implicated here. Second, as to standing for non-monetary relief, the District Court ignored the extensive precedent holding that a person challenging restrictions on expressive activity need allege only a credible threat of enforcement. All that is required to infer such a credible threat here is to take the defendant officers at their word that filming the Secret Service building from a public sidewalk was prohibited and would result in search and seizure. I don't remember you discussing the First Amendment theory, at least not very extensively, in your brief. It seems like maybe we should find that you haven't preserved that argument? In terms of the merits or in terms of the Bivens claim? In terms of the Bivens. You alleged at some point before the appeal that there was a First Amendment Bivens action that should be brought here. That's correct. We pleaded both. We did preserve that issue, and we discussed it in our opening brief, but we acknowledge that that is foreclosed by this Court's precedent. We're preserving it only for the possibility of further review, but we acknowledge that we can't. You hang your hat on the Fourth Amendment? Correct. Correct. And then are you aware of any cases that extend Bivens to a stop and frisk? To a stop and frisk, specifically, I think outside this circuit, the Seventh Circuit's decision in Snowden v. Henning is fairly analogous to that. That was a I'm sorry. Well, that was the use of excessive force in a hotel lobby. There was also Hicks v. Ferrera in the Fourth Circuit. There was a police car stop. I think the closest in this circuit would be Lash v. Lemke, and that was an excessive force claim. You just named two excessive force claims and one vehicle stop. So you I think the answer is no. You don't know of any cases that have extended Bivens to a stop and frisk. And so I would just emphasize that here we had both an unlawful search claim and an excessive force claim. And those two were maybe in some sense connected. But yes, but I don't think I think in every relevant sense, this case is just like Bivens. It is a Fourth Amendment search and seizure violation by line level law enforcement officers doing ordinary law enforcement activity. And so I think that the theories that the government has advanced to distinguish this case and say that this case is a new context, for one, don't include that sort of stop and frisk distinction. But also are just completely overbroad and would have really profound implications in terms of wiping out this court's prior decisions in this area. The question of whether the dismissal, the dismissal and whether you should be granted, whether you should have a chance to amend. Did you seek leave to amend in the district court? We did not. We so the district court didn't specify in its order that we would be permitted leave to amend. And so under Rule 41B, that operated as a final decision on the merits of the issues decided. I think that, you know, the government hasn't made a waiver argument here. They acknowledge in their brief that if there is some basis for that, if there are amendments that could save the complaint, assuming that there are problems with it, that we should be allowed to make those. And so I think even if there's there was potentially a waiver issue, there's there's also a waiver of waiver issue. The government is not back to the excessive point. I get that you argue there should have been no stop and should have been no frisk. Beyond that, what what force was excessive? So I think the application of any force to Mr. Jones' camera was totally excessive because there was no basis at all for that shoving Mr. Jones' camera. I think, you know, any quantum of force, if there's no reason whatsoever. Remind me if you would what the complaint alleges with regard to. Yeah. So there were there were kind of two components to the excessive force claim. There's shoving the camera. And then there's later that even mean shoving, shoving, pushing, pushing Mr. Jones' camera away. They break it. I don't believe so. I'm not I'm not aware of that. But so subsequent to that, the officer also have any cases that discuss excessive force toward a camera or even excessive force toward an inanimate object. I have been not offhand, although I think excessive force applied to an individual's, you know, personal possessions on their person falls squarely within that. But regardless, the officer after that tackled Mr. Jones, forced him to the ground. And is that in the complaint or is it just in your brief? It is in the complaint. So the complaint says that he was forced to the ground and roughly handcuffed and that afterwards he was on the ground, you know, shaking with fear. This was just totally disproportionate to the, you know, zero. Someone on the ground without tackling them, I would think. By that, that may well be possible, I think. And that's what the complaint says. Force. Right. Doesn't say tackle. It does not use the word tackle. That's correct. If that is a salient difference, you know, we'd be happy to amend to clarify. I don't think that has any bearing on the remedial issues that are on appeal now. Can I ask a question? So. The recent Supreme Court decisions, I mean, you'd be hard pressed to find that language in Supreme Court decisions that more tells lower courts be wary of Bivens context. And some of this language is pretty pointed. And in that light. At one level of generality, you could always say it's just like Bivens, because it also involves a law enforcement officer carrying out law enforcement functions and indicating law enforcement functions in a context in which a Fourth Amendment violation arises. And at that level of generality, I think there's a lot of things that would be encompassed by Bivens. So the question is, at what level of generality did you describe it? And one, there is a distinction in some sense in that even if. The particular protective function that was being carried out here, in your view, wouldn't qualify as national security because you're construing national security as something pretty narrowly focused on exactly what the Secret Services charter is in that area. The officers who were carrying out the functions on the day of the incident, they were still involved in protect the protective function of protecting the government facility. So, I don't think the protection in that general kind of, you know, protect and serve sense qualifies as a new context. I think. Not protect and serve because I take that point because all officers are protecting and serving. That's maybe a slogan that applies to all law enforcement in America. But I'm talking about protecting a government facility. So, it seems to me that there's just, you could argue that that's a different context than law enforcement functions out in the field because. And in some ways, what the Supreme Court has asked lower courts to do is to, based on separation of powers, think about the way Congress might approach this. And I guess the question is, couldn't Congress approach it differently based on whether an officer is protecting a government facility? And that's what people at the security booth do. They're protecting a government facility as opposed to officers who are out in the field enforcing the criminal law. Sure. So, I think I have three responses to this. The first is that the government hasn't made this argument. The government has focused on these secret services, protective functions, arguing that they were acting pursuant to a unique statutory mandate invoking that basis for distinction in Ziegler v. Abbasi. And so, that's what the government has argued here. Bivens is not jurisdictional. Ordinary rules of party presentation applied. And so, I think at the very least, this court should say the government's arguments for saying this is a new context are wrong. The district court's reasoning was wrong. And it should at least be vacated on that basis. But I also, I see I've hit time. I want to hear your other two. Yeah, please. So, beyond that, I would say that this is the exact, you know, checking IDs at a driveway to a parking lot is the exact same sort of everyday normal law enforcement stuff done by officers of practically every agency around the country, state or federal. And simply because it could be characterized as protecting a building, I don't think can make the difference. And I don't think that that sort of day-to-day law, you know, the fact that it's important is not a basis for saying it's a new context. All law enforcement activity is important. I agree with that. I don't think there's a distinction in terms of level of orders necessarily, because you never know what the threat is going to be in any particular instance. It could always be something, whether you're out in the field or you're protecting a building. It just strikes me that it seems like arguably a different context when it is, of course, it's garden variety law enforcement in that it happens a lot. But the question is, is it a context that could be seen as distinct from the context in which Bivens arose, even though they both involve Fourth Amendment? I think drawing a distinction at that granular level really would not be much different than saying, if you're not named Bivens, your claim can't proceed. There are always ways you could characterize a particular action by line level law enforcement. No rational Congress would authorize a private action only for people named Bivens. But then the question would be, could a rational Congress authorize a private cause of action that doesn't encompass protecting government facilities because the balance of consideration seems different in that context? And again, I think when you're dealing with activity that looks no different from next door, you could have had some private building where there's private security guarding the parking lot. And next door to that, you could have some municipal building where the D.C. police is checking IDs at the parking lot. I do not think that checking IDs at this driveway implicates these sort of national security concerns. And again, I'd emphasize that the government's basis for identifying a new context here is the Secret Service's unique protective mandate. And this activity clearly doesn't fall within that. Did you already do your third one? Yeah, I believe so. You did. And what was it? So just to make sure I remember the distinction between the second and third one. So, you know, I think I may have blended the second and third, but I've completed my answer. And I see that I am out of time. I just want to make sure that if there are questions on the standing arguments, I have an opportunity to address those. Thank you. We'll give you some time for rebuttal. Lily. Good morning. May it please the court, Janie Lilly for the defendants. As this court has the panel has identified, inventing a novel damages remedy for Secret Service officers engaged in their protective mission is contrary to the instructions of the Supreme Court and this court, which has asked courts to look at precisely the balance of policy interest that Congress would have to consider were it to extend a damages remedy into a novel context. And the Supreme Court has instructed that the new context inquiry is a broad one and that it's easily satisfied. And that has done so. Can I ask you this? So the Secret Service engages in garden variety law enforcement. I mean, they obviously have the protective function to protect ease, but they can also go out and investigate crimes. Your Honor, the plaintiff has pointed to the investigative missions related to cyber crime and counterfeiting. And it's pretty clear on the allegations of this complaint that those weren't the missions involved. I'm not talking about this case. I'm just saying in the abstract that that can happen. That there are yes, that there are certain specific investigative. The Secret Service member, a Secret Service agent is out carrying out that function and then does what happened to evidence. Would you acknowledge that a Bivens cause of action could lie there, even though a particular officer who carried it out was a Secret Service officer? I think that would present a very different case. You know, this is not a different case than this one, I guess. Right. But I mean, to put it beside this case, I'm just asking for the breadth of the government's theory. Yeah, I don't know after Egbert whether the Secret Service's mission in investigating cyber crimes or whatever what is issued there might differ. Again, the context is important. The conduct was exactly the same as as the conduct that Bivens faced. Your Honor, the Supreme Court has said that that's not sufficient, that those factual similarities are not sufficient. But again, I think we're pretty far. I don't know that the Supreme Court's ever said that because the officer who carries out the exact same conduct as was carried out against Mr. Bivens is employed by a different agency, that that would itself mean it's a different context for Bivens purposes. I'm not sure in those words, but the Supreme Court's new context inquiry has said it's broad, it's easily satisfied in the non-exhaustive list of factors. I'd just ask for the government's view on, I take your point that the context inquiry is heavily tilted in favor of the government in the way that it's articulated by the Supreme Court. It used a lot of language with italics that emphasize that, but I'm just wondering about the government's theory. Would the government take the position that if the conduct that was visited upon a citizen was the same as the conduct that was visited upon Bivens and happened even in the same place, but it was carried out in the course of an investigation of something that's within the Secret Service's charter to investigate and a Secret Service officer did it, that that would not be within the fold of Bivens? Your Honor, I don't know whether an investigation of counterfeiting or cybercrime would ever involve that type of similar conduct at issue at Bivens. I'm just hypothesizing that it does. I mean, I think that a fair reading of Egbert would suggest that the identity of the defendants and the statutory mandate under which they were operating would be a fair basis for distinguishing that from Bivens. But the court, this is very far afield. How would you define the context of Bivens then? Because in order to apply Bivens, we have to know whether something is a different context. It would be based on context that we'd be saying it's different from. I'm not sure that the court needs to define the core context of Bivens because two officers standing out in front of Secret Service property who are responding to a member of the public with an unusual direction of interest inside the building and who repeatedly refuses to comply with their directions are very far afield for many of the conduct at Bivens. So I'm not sure the court needs to address. I'm not sure that we need to for the purpose of this case. But I'm just wondering, from the government's perspective, how would you define the context of Bivens? Because it seems like the way the rational court would conduct the inquiries to say, at least for thought experiment purposes, is that we have to decide whether something's a new context. A new context from what? A new context from Bivens. OK, then that requires us to ask, well, what's the context of Bivens so that we can analyze whether this thing that we're facing is a new context? I think that's right. The Supreme Court and this court have described the holding of Bivens in ways that makes it very easy to distinguish this case from that as an excessive force claim by officers who invaded or who conducted a warrantless and unlawful search in furtherance of routine narcotics investigation. So I think that's how the Supreme Court and this court have described this. The routine narcotics investigation kicks in, I guess. And if it were a different law enforcement agency that were also conducting narcotics investigations, and it wasn't, I mean, obviously the agency that was involved in Bivens doesn't exist, then that would be governed by Bivens. It might be, Your Honor. Again, the new context inquiry is very fact specific. And so I would. Even that one is might be. I'd be loath to sort of commit the government on the stand here to some position in a future case where the Supreme Court and this court have instructed is a very fact intensive inquiry. So especially in this case where I don't think the court needs needs to define the outer contours of Bivens to hold that these Secret Service officers who were protecting this building engaged in their protective functions is an entirely new context. And what if we were we weren't necessarily persuaded that these officers in this context were involved in the standard national security function of the Secret Service, but they were involved in protecting a government facility. Your Honor, I think that the court could could also find a new context on that basis, although the district court found the facts, the factual allegations sufficient to conclude that this was pursuant to their protective functions. And I think the questions that the court is posed and the suggested intrusive discovery that plaintiff has suggested in order to parse whether the president or the vice president was in the building at the time are precisely the type of separation of powers concerns that the Supreme Court has said gives rise to a new context for the purposes of the Bivens inquiry. There are certainly times when the government does insist on inquiring whether, for example, criminal defendant knows whether the vice president is in the building or not. We just decided a case that this court just had a case about that where the government said it's quite appropriate. There was a dissent, but the government won on his argument that it's appropriate to inquire into whether a criminal defendant knew he was trespassing into an area where the vice president was present. That may be your honor. I think here doesn't have a blanket rule against kind of discovery and inquiry into whether the vice president is in a particular place. In fact, some of their criminal prosecutions depend on it. That may be your honor. I think the new context inquiry under the Supreme Court's instructions and Egbert and Abbasi would preclude precisely that type of parsing and that type of intrusive discovery. That's a further reason that this presents an entirely new context for the narcotics agents in Bivens. We're working for an agency that has a national security mission, right? Your honor. Yes, it's certainly under plaintiff's theory that that alone seems like it means the district court's reasoning was wrong here because. The district court's reasoning seems to be well, the Secret Service has a national security mission, so it's different than Bivens, but the narcotics agency in Bivens also had a national security mission. So that can't be the distinction between this and this. Yeah, I can't be the distinction between this case and Bivens. Your honor, I think that's not necessarily an accurate characterization of the district court's holding it. One identified that it was a different mission than in Bivens and the unique statutory mandate of the Secret Service that implicates national security. And in terms of the agency's mission, not the point of the particular investigation or stop issue in the case, but the agency's general mission. What's the difference between the narcotics agency? I guess today it's the DEA. I think at the time of Bivens, maybe it wasn't called the DEA and the Secret Service. It seems like they both have a national security mission. Your honor, I think the district court was very clear that the special mission of the Secret Service involved in protecting high level government officials, sites of national importance, foreign missions was vastly different than the statutory mandate under which the officers in Bivens were operating when they were conducting a narcotics investigation. I think that is very, very clear. The Secret Service's protective purposes serve a national security purpose, right? Yes, your honor, that the protective functions in which that have been entrusted to the Secret Service and which Congress has determined the scope of which Congress is determined for the Secret Service are vastly different than those at issue in Bivens. Because the DEA does not have a national security mission? Your honor, the Supreme Court has not instructed the courts to look at the sort of invocation purely of national security, but it looks to whether the specific statutory mandate under which the officers were operating is different. And that's the focus of the new context inquiry and the district court's analysis. The DEA doesn't have a statutory mandate that involves national security? It involves a different statutory mandate. And to Judge Sreenivasan's point earlier, thus the Supreme Court has instructed crafting a novel damages remedy in the context of Secret Service's own mission would involve a different policy balance that is better entrusted to Congress than the courts. I think you can agree. I think you can win the case without relying on the district court's reasoning here. And maybe you tell me if you agree with this. One of the ways you win the case is Egbert was really quite similar to Bivens. So, in order to have a Bivens action, you need a case that's even closer to Bivens than Egbert, which is definitely not this case. I'd be happy to win the case on that ground, your honor. Okay, no further questions. Yes, that the court affirmed the judgment of the district court. Yeah, I'm gonna give you two minutes for rebuttal. Thank you. A few brief points. The DEA has had statutory national security functions since at least 1978, probably some earlier, but that, you know, certainly by then. I think the agents here clearly were not involved in exercising their protective functions. Those are defined by statute under 18 U.S.C. 3056 and 3056A. There are specific individuals, specific sites. It's not some capacious mandate to protect whatever. These are really, it's really a narrow function. And I think it's really not right that the distinction in cases like Hernandez and Egbert were small. Those were cases in Ziegler as well. You know, you had a cross-border shooting. You had enforcement directly related to interdiction at the border. And you had detention of individuals who were persons of interest in 9-11. So those were all cases with really huge national security implications that I think far exceed what was going on here. And, you know, to the extent that, you know, the government has, you know, preserved, I don't think they make this in their brief, the argument that simply, you know, standing guard, checking IDs at any federal building is a new context. I do think that there is at least a fact dispute about whether that was really what was going on here, at least with respect to the second officer who wasn't at that guard post. This really looks like two officers coming outside the building because they were unhappy about being filmed. And that's a totally different context, given that the government hasn't even made that narrower argument. I think the court should limit itself to saying that the district court got this wrong. And finally, just to say a little bit on the standing issue, I just want to make two brief points. One, this court has said expressly in pain, cited in our brief, that in terms of the standard for standing under SBA list, you know, even a challenge to their standing, even a challenge in informal policy. So it doesn't matter. I don't think the government has denied that there's a more formal policy. But even without that, there would be no issue. And Mr. Jones alleged that he regularly engages in this type of journalistic activity. And on remand, we'd be prepared to say that he would go back and film this particular building on a date certain if this, you know, threat of being subject to this excessive force and unlawful search again were removed by a favorable decision. We'd ask the court to reverse. Thank you, counsel. Thank you to both counsel.
judges: Srinivasan; Walker; Edwards